UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARFIELD KING,

    Plaintiff,                                   Civil Action No. 05-40274

v.                                            HON. PAUL V. GADOLA
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further fact-finding.

## **PROCEDURAL HISTORY**

On July 14, 2003, Plaintiff filed an application for Supplemental Security Income (SSI), alleging an onset date of June 1, 1998 (Tr. 50-52). Administrative Law Judge (ALJ) Ransom held a hearing on September 20, 2004 in Flint, Michigan (Tr. 241). Plaintiff,

represented by attorney Mikel Lupisella, testified (Tr. 243-250), as did Judith Findora, a vocational expert(VE) (Tr. 250-253). ALJ Ransom found on February 15, 2005 that Plaintiff was not disabled because although he did not possess relevant work skills, he could perform unskilled work at the medium exertional level which existed in significant numbers in the national economy (Tr. 23). On August 4, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on August 31, 2005.

## BACKGROUND FACTS

Plaintiff, born August 10, 1939, was age 65 when the ALJ issued his decision on February 15, 2005 (Tr. 23). He completed an extended prison sentence in June, 2003 (Tr. 18). He alleges disability due to hypertension, breathing problems, and complications from cancer (Tr. 18, 69, 246).

### A.   Plaintiff's Testimony

Plaintiff, 65, testified that he stood 5' 8" and weighed 198 pounds (Tr. 244). He reported that he had left school after sixth grade, but later completed a GED (Tr. 244). Plaintiff, divorced and living in a friend's apartment, stated that he performed housekeeping chores on a regular basis (Tr. 245).

Plaintiff indicated that he took blood pressure and sleep medication daily, adding that he often experienced dizziness upon taking his blood pressure prescription (Tr. 246). He estimated that he could stay seated in one position for up to twenty minutes before requiring a position change, adding that he could walk only one block without difficulty, due to a limited lung capacity (Tr. 247). He opined that he retained the ability to lift fifteen or twenty

pounds, but could perform only limited pushing or pulling (Tr. 248). He indicated that he could bend and crouch with difficulty (Tr. 248). He added that his blood pressure condition sometimes caused his hands and feet to swell to the extent that he was unable to put on his shoes (Tr. 248). He reported that his most comfortable position was sitting with his feet raised to waist level, adding that he spent the majority of his waking hours sitting at home watching television (Tr. 249-250). He acknowledged smoking four cigarettes each day (Tr. 251).

### B.     Medical Evidence

In July, 1998 an examination performed by Michigan Department of Corrections (MDOC) medical treaters showed that Plaintiff experienced high blood pressure (Tr. 191). Notes from a January, 2001 exam indicate that Plaintiff, a former intravenous drug user, had undergone surgery for bladder cancer (Tr. 186). In April and December, 2001, urine analyses showed no evidence of cancer (Tr. 176). In October, 2001, Plaintiff underwent imaging after complaining of chest pains (Tr. 161). Results show chronic obstructive pulmonary disease, but "lung fields . . . free of acute disease process" (Tr. 155). In April, 2002, Plaintiff underwent a cystoscopy of the bladder which found no recurrence of cancer (Tr. 114).

Notes from a March, 2003 exam of Plaintiff's heart, lungs, and skin showed normal results (Tr. 131). Plaintiff was encouraged to lose weight, exercise, and quit smoking (Tr. 131).

A March, 2003 Residual Functional Capacity Assessment found that Plaintiff could lift up to 50 pounds occasionally, 25 pounds frequently, stand, walk, or sit for about six hours

in an eight-hour workday, also retaining with unlimited abilities to push or pull (Tr. 96). The report found further that Plaintiff was limited to frequent balancing, stooping, kneeling, crouching and crawling, and only occasional climbing (Tr. 97).

Notes from a June, 2003 examination by Janes Street Clinic staff indicate that Plaintiff could lift up to 25 pounds occasionally, sit for up to eight hours a day, stand for one half to one hour, and walk from one half to one hour (Tr. 206). In November, 2003, Plaintiff sought care for erectile dysfunction (Tr. 237). In January, 2004, Chin-Ti Lin, M.D., prescribed Viagra, noting at a followup appointment that Plaintiff reported minimal improvement (Tr. 235).

A February, 2004 consultive examination by Siva Sankaran, M.D., indicates that Plaintiff was previously diagnosed with Hepatitis C, but reported no side effects (Tr. 216-217). Plaintiff also reported that he had been diagnosed with high blood pressure and emphysema, adding that he was affected by emphysema only to the extent that "he gets short of breath when walking about four blocks at a fast pace" (Tr. 216). Plaintiff admitted to smoking four cigarettes a day and drinking a 40 ounce beer every other day (Tr. 217). Dr. Sankaran found that Plaintiff experienced only mild restrictive airway disease (Tr. 218). She concluded by stating that

> "it appears this patient never worked in his adult life except for two or three months here or there. He was fired from jobs because of absenteeism. From 1992 until he went to prison in 1998 he was on SSI. While he was in prison he was found to have Hepatitis C as well as emphysema, from which he is totally asymptomatic. Clinical examination does not show any evidence of chronic liver disease. Blood pressure appears to be well controlled with the medication he is taking"

(Tr. 218).

Plaintiff's Daily Activity Sheet, completed in May, 2004 shows that Plaintiff walkedmto the Janes Street Clinic to pick up prescriptions (Tr. 89). Activity sheets from the same period show that Plaintiff took a two hour walk "around town," followed by a four hour walk the next day (Tr. 90-91).

### C. Vocational Expert

VE Judith Catherine Findora indicated that Plaintiff, incarcerated between 1998 and 2003 did not possess transferable work skills (Tr. 251). The ALJ posed the following hypothetical question:

> "Assume for me, if you would, that he could perform work, but would require work where he wouldn't have to lift over 25 pounds maximum. No working around unprotected heights or moving machinery due to his medication, and in a controlled environment. . . . free from prolonged or frequent exposure to dust, smoke, and fumes. Now, in your opinion would there be jobs existing in significant numbers in the regional economy that he could perform?"

(Tr. 251). The VE replied that such an individual could perform a number of unskilled jobs at the medium exertional level including positions as a dining room attendant (11,000 jobs regionally), housekeeping positions (11,000), food service worker (1,100), and janitorial positions (10,000) (Tr. 252). She stated that her testimony conformed to the Dictionary of Occupational Titles and its companion publications (Tr. 271). In response to questioning by Plaintiff's attorney, she indicated that if a sit/stand option were included in Plaintiff's hypothetical limitations, he would be unable to perform any of the jobs cited (Tr. 252).

### D.   The ALJ's Decision

The ALJ found that although Plaintiff experienced the severe impairments of emphysema, hypertension, hepatitis C, and status post bladder cancer, none was severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17). He noted that although Plaintiff had no past relevant work experience, he retained the following residual functional capacity (RFC):

> "[A] limited range of unskilled medium work with restrictions of lifting a maximum of 25 pounds, no unprotected heights or working around moving machinery and a controlled environment free from prolonged or frequent exposure to dust, smoke and fumes"

(Tr. 21). Adopting the VE's job findings, he determined that Plaintiff could perform jobs as a dining room attendant, housekeeper, food service worker, and janitor, finding that in total, 42,000 such jobs existed in the regional economy [1] (Tr. 22).

The ALJ supported his determination by stating that he found Plaintiff's subjective complaints "not totally credible" (Tr. 23). He concluded that Plaintiff's allegations of limitations were unsupported by his medical records, noting from his testimony that he could walk a maximum of one block stood at odds with an earlier statement to an examining physician that he could "walk four blocks at a fast pace" (Tr. 19). He cited Plaintiff's sporadic employment record prior to his imprisonment, noting that

> "[s]uch an extremely poor work history reveals a lack of motivation for obtaining and sustaining work activity for many years prior to the amended onset date and prior to the time that he was incarcerated. It is apparent that

---

[1] However, the administrative decision states that 10,000 food service jobs exist regionally, in contrast to the VE's finding the occurrence of only 1,100 such jobs (Tr. 22, 252).

claimant has engaged in almost a lifelong absence from the work force and has never supported himself financially"

(Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  SSR 82-63

Plaintiff disputes the ALJ's finding that he had a high school education, maintaining because he dropped out of school in sixth grade, his education should be properly characterized as "marginal."  *Plaintiff's Brief* at 6.  He argues, pursuant to SSR 82-63, that his marginal education, along with his age and lack of work skills create a presumption of disability. *Id.* at 7.

   SSR 82-63 states in pertinent part that

> "[g]enerally, where an individual of advanced age with no relevant work experience has a limited education or less, a finding of an inability to make a vocational adjustment to substantial work will be made, provided his or her

>impairment(s) is severe, i.e., significantly limits his or her physical or mental capacity to perform basic work-related functions.[2] In the cases involving individuals of advanced age, the only medical issue is the existence of a severe medically determinable impairment. The only vocational issues are advanced age, limited education or less, and absence o relevant work experience. With affirmative findings of fact, the conclusion would generally follow that the claimant or beneficiary is under a disability."

Plaintiff's argument ignores the fact that at the administrative hearing he testified to attaining a GED "sometime in the 1980s" (Tr. 244). Further, Plaintiff's application for SSI states that he received a GED while incarcerated (Tr. 75). As pointed out by Defendant, Plaintiff's records do not contain any information disputing these claims. A General Equivalency Degree, as its title suggests, indicates that an individual has for all practical purposes attained the education equivalent of a high school diploma. Plaintiff fails to cite case or statutory law indicating that his GED should be accorded a lower status than a high school education. The ALJ did not err (much less present grounds for remand) in finding for purposes of his analysis that Plaintiff obtained a "high school education" by completing his GED.

### B. Hypothetical Question

Plaintiff contends that the ALJ erred by composing a hypothetical question that did not accurately portray his impairments. *Plaintiff's Brief* at 7. He maintains that the ALJ's question to the VE, which limits him to lifting a maximum of 25 pounds, describes the work

---

[2]20 CFR § 416.964(b) describes a "limited" education as the completion of 7th through 11th grades. Formal schooling at a 6th grade level or less is deemed "marginal."

performed at the light, rather than medium exertional level. *Id*. at 9. He argues that the description of light, rather than medium work mandates a finding of disability pursuant to Medical-Vocational Rule 202.01 or 202.04 due to his advanced age. *Id*. at 10.

*Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), articulates the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." (internal citations omitted). *Id*. at 9.

Further, in the present case, because of Plaintiff's advanced age, whether the ALJ posed a question describing a capacity for medium or light work is pivotal to the ultimate disability question. Under Medical-Vocational Rule 202.04, a claimant of advanced age with no direct entry into skilled work, no previous work experience, and limited to work at the light exertional level (the ability to lift 20 pounds occasionally and ten pounds frequently, as opposed to the medium requirement of 50 pounds occasionally and 25 pounds frequently) is deemed disabled. 20 C.F.R. § 416.967 (b).

In and of itself, the ALJ's use of VE in determining that Plaintiff could perform a limited rather than full range of medium work does not constitute error. Further, substantial evidence contained in Plaintiff's records supports a finding that he can perform the lifting requirements of medium work (Tr. 96). However, the ALJ's finding, articulated in the hypothetical question, that Plaintiff could lift a maximum of 25 pounds, unaccompanied by a determination that he could perform such lifting as often as *frequently* constitutes reversible

error. The hypothetical question, as posed, describes a capacity for light rather than medium work. While the remainder of the question, such as the ability to stand or walk for six hours suggests a capacity for medium work, the exertional categories are demarcated primarily by lifting requirements. "A difference in the ability to lift is the only characteristic distinguishing medium work from light work." *Bady v. Sullivan,* L 107293, 2 (N.D.Ill.,1992). *See also Grindle v. Sullivan,* 774 F.Supp. 1501, 1511 FN9 (N.D.Ill.,1991) ("At the risk of beating a dead horse, it must not be forgotten that the critical watershed between the capacity to do light work and the ability to do medium work is a function of how much a person can lift--both frequently and occasionally."). While exertional levels are generally and most importantly distinguished by lifting requirements, the determination of what a claimant can lift *frequently* is most relevant.

I agree with the analysis in *Herbert v. Sullivan* 1993 WL 23792, 2 -3 (E.D.Pa.1993), where the court found that lifting 50 pounds *occasionally* was not dispositive of whether the plaintiff can perform medium work, noting that "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." *Id*. at 3 (emphasis added); SSR 83-10 at 6. The court, finding no error in the ALJ's omission of a determination that the plaintiff could lift 50 pounds occasionally, remanded the case for further fact-finding, due solely to the ALJ's failure to note that in addition to retaining the ability to lift 30 pounds, the plaintiff could lift such an amount *frequently*. *Id.* (emphasis added).

Likewise, in the present case, although the ALJ's finding that Plaintiff could lift a

maximum of 25 pounds does not in and of itself contradict the finding that he can perform medium work, the ALJ must further determine whether Plaintiff retains the ability to perform such lifting on a frequent or merely occasional basis.  Despite the fact that Plaintiff does not present a strong case for benefits - indeed, the record is replete with indications to the contrary - as discussed above, such a determination is critical to the ultimate disability finding and therefore a remand is necessary.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further fact-finding and analysis.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                S/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

Dated: April 17, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 17, 2006.

                                S/G. Wilson
                                Judicial Assistant